UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                                    CASE NO: 2:15-cr-46-FtM-38CM

JORGE E. REINA

### ORDER[1]

This matter comes before the Court on the Defendant Jorge E. Reina's Motion to Suppress (Doc. #23) filed on July 20, 2015. The United States filed its Response in Opposition (Doc. #26) on July 27, 2015.

On August 11, 2015, a hearing was held before the undersigned. The Government was represented by Assistant United States Attorney David Lazarus. The Government called Officer Christopher Scavo of the Fort Myers Police Department ("FMPD") as its only witness and also presented videos and documents as evidence. The Defendant was present and represented by Thomas E. DeMine, Esq. The Defendant did not present any evidence or testimony.

The Defendant moves to suppress the SKS assault rifle found in his vehicle, any ammunition, any alleged statements made by the Defendant, any observations made by law enforcement, and any other evidence uncovered because of the detention and subsequent search of the Defendant's vehicle. The Motion is ripe for the Court's review.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## FACTS

On March 29, 2015, the Defendant was arrested by Officers of the FMPD for possession of a firearm by a convicted felon. At the hearing on the Defendant's Motion to Suppress, Officer Scavo testified as to the events surrounding the Defendant's arrest.

Officer Scavo responded to a call at 766 Marsh Avenue, Fort Myers, Florida on March 29, 2015, at approximately 9:20 AM. In addition to Officer Scavo, Officer Tony Brown also responded to the call to investigate an alleged disorderly intoxication. The Defendant had visited the house earlier that morning and allegedly threatened to punch the complainant's mother, Maria Blanco, in the face and hurt her. Blanco resided in the Marsh Avenue home.

Officer Scavo arrived at the scene as backup and witnessed Officer Brown talking with a female who appeared visibly upset. Officer Brown was told that the Defendant had threatened to punch her in the face. During their investigation, the Officers learned that the Defendant had recently left the residence in a green Sunfire license plate 633 QQW, owned by Oliva Herrera. Officer Brown remained at the Marsh Avenue address with the alleged victim while Officer Scavo searched the neighborhood for the green Sunfire. Shortly thereafter, around 9:34 AM, Officer Brown also left the Marsh Avenue residence.

At approximately 9:36 AM, Officer Scavo observed a green Sunfire bearing license plate number 633 QQW traveling toward the Marsh Avenue residence. Officer Scavo testified that he followed the Sunfire for approximately one-quarter to one-half of a mile to the Marsh Avenue residence. He testified that he turned around and followed the Sunfire because he was concerned the driver was going to commit a crime. Officer Scavo waited until the Defendant turned into the driveway of the residence to activate his

emergency lights. Officer Scavo testified that he activated the lights because he was afraid, based upon the totality of the circumstances, the Defendant was going to breach of the peace or cause another altercation. As Officer Scavo pulled in behind the Defendant's vehicle, a woman approached the Defendant's vehicle, opened the driver's side door, and slapped the Defendant.

At approximately the same time, Officer Brown returned to the residence. Officer Brown parked along the street, exited his patrol car, and approached the Sunfire from the driver's side door. Officer Scavo also exited his patrol car and approached the Sunfire. Officer Brown was the first officer to approach the vehicle. As Officer Brown approached the vehicle, the Defendant attempted to exit the vehicle, but Officer Brown ordered him to stay inside. As Officer Brown approached the vehicle, he announced there was a gun in the vehicle. Officer Scavo observed an assault rifle (Norinco SKS) lying on the front seat on the passenger side of the vehicle. Officer Brown then removed the Defendant from the vehicle, escorted him to the ground, and handcuffed him. Officer Brown then removed the rifle from the vehicle. The rifle was loaded including one round in the chamber. At approximately 9:39 AM, Officer Scavo secured the rifle in the trunk of his patrol car.

At 9:41 AM, Officer Brown conducted a records check via radio on the Defendant and discovered he was a convicted felon. The Defendant arrested for being a felon in possession of a firearm. In addition to the assault rifle, the Defendant was cited for having an open container in the vehicle.

## DISCUSSION

The Defendant argues that Officers Brown and Scavo violated his Fourth, Fifth, and Fourteenth Amendment rights by stopping him in the driveway of the Marsh Avenue

3

residence and subsequently searching and seizing evidence from his vehicle. The Government responds that the Defendant lacks standing to challenge the stop and search, the Officers had reasonable suspicion to stop the vehicle, and the search did not violate the Fourth Amendment.

### (1)  Whether the Defendant has Standing

The Government argues that Defendant lacks standing to challenge the search and seizure of the SKS rifle because he did not have a reasonable expectation of privacy, as he was on another's private property in an open driveway in plain view for all to see. Contrary to the Government's position, the issue is not whether the Defendant owns the residence where the vehicle was parked, but whether he has a privacy interest in the vehicle.

It is well established that for a defendant to move to suppress evidence, he must have standing. United States v. Eyster, 948 F.2d 1196, 1208-09 (11th Cir. 1991). A defendant has the burden of showing standing under the Fourth Amendment standard. United States v. Brazel, 102 F.3d 1120, 1147 (11th Cir. 1997). To claim the protection of the Fourth Amendment, an individual must have a "reasonable expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978). A defendant's expectation must be "personal[ ]" and "reasonable," and it must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (citations and internal quotations omitted). "Standing does not require an ownership interest in the invaded area." United States v. Hernandez, 647 F.3d

216, 219 (5th Cir. 2011) (noting the Supreme Court has recognized that an overnight guest in a home has a legitimate expectation of privacy in that home).

Although fact-specific, case law has established some general boundaries as to what society will accept as reasonable regarding privacy in a motor vehicle. For example, a passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns or rents it. Rakas, 439 U.S. at 130; U.S. v. Eylicio-Montoya, 70 F.3d 1158, 1162 (10th Cir. 1995). On the other hand, a driver using a vehicle with the permission of an absent owner has been found to possess a reasonable expectation of privacy therein. Cooper, 133 F.3d at 1398 (citing U.S. v. Garcia, 897 F.2d 1413, 1416-18 (7th Cir. 1990)).

The Government argues the Defendant does not a privacy interest in the vehicle because the vehicle was located on a private driveway on private property. The Government's argument is not well taken. The privacy interest at issue here is not the residence or the driveway, but the vehicle driven by the Defendant. Although Officer Scavo testified the vehicle was registered to Oliva Herrera, and not the Defendant, the case law is clear that the driver of a borrowed vehicle has a clear privacy interest in the vehicle. Cooper, 133 F.3d at 1398. Therefore, the Defendant has standing to challenge the stop and search of the vehicle.

*(2) Whether There was Reasonable Suspicion to Stop the Defendant*

The Defendant argues the Officers had no reason to stop his vehicle. He argues it is uncontested that Defendant did not commit any traffic violations, and there was no reasonable suspicion of criminal activity.

"It is well-settled that the Fourth Amendment prohibits 'unreasonable searches and seizures' by the government, and its protections extend to brief investigatory stops of persons or vehicles that do not amount to a full, traditional arrest." U.S. v. Barnett, No. 2:08-cr-100, 2009 WL 426023, at *7-8 (M.D. Fla. Feb. 19, 2009); U.S. v. Williams, No. 8:04-cr-541, 2006 WL 1540287, at *4-5 (M.D. Fla. May 31, 2006) (quoting Terry v. Ohio, 392 U.S. 1, 9 (1968); U.S. v. Cortez, 449 U.S. 411, 417 (1981)). The Fourth Amendment is satisfied if the officer's actions are supported by reasonable suspicion to believe that criminal activity "may be afoot." Terry, 392 U.S. at 30. "Reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000). However, the Fourth Amendment requires at least a minimal level of objective justification for making the stop; the officer must be able to articulate more than an "inchoate and unparticularized suspicion or hunch" of criminal activity. Id. (citing U.S. v. Sokolow, 490 U.S. 1, 7 (1989); Terry, 392 U.S. at 27)); Cortez, 449 U.S. at 417.

In making a reasonable suspicion determination, the court must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. U.S. v. Arvizu, 534 U.S. 266, 273-74 (2002) (citing Cortez, 449 U.S. at 417-18). This process allows officers to draw on their own experience and specialized training to make inferences from, and deductions about, the cumulative information available to them that "might well elude an untrained person." Arvizu, 534 U.S. at 273-74 (citing Cortez, 449 U.S. at 418; Ornelas v. U.S., 517 U.S. 690, 699 (1996)).

In Terry v. Ohio, the Court adopted "a duel inquiry for evaluating the reasonableness of an investigative stop." U.S. v. Sharpe, 470 U.S. 675 (1985); U.S. v. Acosta, 363 F.3d 1141, 1144 (11th Cir. 2004). By this approach, the court examines "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Sharpe, 470 U.S. at 682. Whether an officer's actions were justified at the inception "turns on whether the officers had a reasonable suspicion that the defendant had engaged, or was about to engage, in a crime." Acosta, 363 F.3d at 1144-45. In the second part, the court looks to whether the stop was related in scope to the circumstances which justified the stop in the first place. Id.

Contrary to the Defendant's position, Officer Brown and Scavo had reasonable suspicion that criminal activity was afoot. The police were called by known citizen informant, Blanco's daughter, who informed the Officers that the Defendant had threatened to punch Blanco in the face. The officers went to the scene and met with the complainant who was visibly shaken. By the time the officers responded to the complaint at the Marsh Avenue residence, the Defendant had departed. The officers were given a description of the vehicle the Defendant was driving as well as the vehicle's license plate number.

As Officer Scavo was driving the area looking for the Defendant, he observed a vehicle matching the color, make/body style, and license plate number reported by the complainant travelling toward the Marsh Avenue residence. The complainant had told him that the Defendant had been drinking and had threatened violence toward Blanco. Within minutes of being informed by Blanco and the complainant that the Defendant had

threatened Blanco, the vehicle turned into the Marsh Avenue residence. Once the vehicle was in the driveway Officer Scavo turned on his emergency lights, and he and Officer Brown approached the Defendant's vehicle.

When asked why he turned on the emergency lights to investigate the Defendant's arrival at the Marsh Avenue residence, Officer Scavo testified that he was concerned that another crime was going to be committed – a breach of peace or another altercation. Although the Defendant argues that there was no overt act to make Blanco think the Defendant would actually punch her in the face, the Defendant did threaten her. Blanco and her daughter took the threat seriously enough to call the police and ask for an investigation. The Officers were also informed the Defendant was drinking and driving.

A review of the circumstance surrounding the incident shows the Officers had been informed that the Defendant was drinking, and he had earlier threatened violence against Blanco at the Marsh Avenue residence. Based on the totality of the circumstances, it was reasonable for Officer Scavo to believe that a crime was about to be committed. Thus, under the standard set forth in Terry v. Ohio and its progeny, the investigative stop performed by Officers Scavo and Brown did not contravene the Fourth Amendment.

### 3  Whether the Warrantless Search of the Vehicle Violated the Fourth Amendment

The Defendant does not address the warrantless search of the vehicle *per se* but only the stop. However, the Government addresses the issue in its brief so the Court will address the issue as well.

The Supreme Court has held, if there was probable cause to search a vehicle, a warrantless search would not be deemed a violation of the Fourth Amendment provided the facts of the case would have justified a warrant even through a warrant was not

actually obtained. U.S. v. Ross, 456 U.S. 798, 809 (1982). "While it is true that the Fourth Amendment generally requires law enforcement officers to obtain a warrant before conducting a search, there is what has become known as the automobile exception to the warrant requirement." U.S. v. Watts, 329 F.3d 1282, 1284 (11th Cir. 2003). The automobile exception holds, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment … permits police to search the vehicle without more." Id. at 1285 (citing Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). No special exigency is required beyond a showing that the vehicle is mobile. Maryland v. Dyson, 527 U.S. 465, 467 (1999) (*per curiam*). The Supreme Court has held that if there was probable cause to search a vehicle, a warrantless search would not be deemed a violation of the Fourth Amendment if the facts of the case would have justified a warrant even through a warrant was not actually obtained. Ross, 456 U.S. at 809.

Here, the vehicle was mobile as established by the fact that the officers saw it travelling toward the residence and it had just pulled into the driveway and stopped. As the Officers approached the vehicle, Officer Brown observed the SKS rifle laying in plain view on the front passenger seat.[2] Given that the vehicle was mobile, Blanco alleged Defendant threatened her, and the firearm laying in plain sight, there was sufficient probable cause for the officers to seize the SKS rifle and search the vehicle without a warrant. Id.

---

[2] The "plain view" doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent. U.S. v. Bergen, No. 2:14-cr-7, 2014 WL 4373272, at *2 (M.D. Fla. Sept. 3, 2014).

9

## **CONCLUSION**

Based on the parties' briefs and the testimony and evidence presented at the hearing, it is clear that the Officers had reasonable suspicion to stop the Defendant's vehicle based on <u>Terry v. Ohio.</u> Further, given the automobile exception to a warrantless search and the fact that the SKS rifle was laying in plain view, the stop, and warrantless search of the vehicle did not violate the Fourth Amendment. Therefore, the Motion to Suppress will be **DENIED**.

Accordingly, it is now

**ORDERED:**

The Defendant Jorge E. Reina's Motion to Suppress (Doc. #23) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 13th day of August, 2015.

*[signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record